**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RIMOWA GMBH,<br><br>                    Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A,"<br><br>                    Defendants. | Case No. 19-cv-02697 |

## COMPLAINT

Plaintiff Rimowa GmbH ("Rimowa") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain

Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of Rimowa's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Rimowa's trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Rimowa substantial injury in the State of Illinois.

## II. INTRODUCTION

3.     This action has been filed by Rimowa to combat online counterfeiters who trade upon Rimowa's reputation and goodwill by selling and/or offering for sale luggage and other travel accessories using counterfeit versions of Rimowa's federally registered trademarks (collectively, the "Counterfeit Rimowa Products"). The Defendants create the Defendant Internet Stores by the dozen and design them to appear to be selling genuine Rimowa products, while actually selling Counterfeit Rimowa Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Rimowa is forced to file these actions to combat Defendants'

counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Rimowa Products over the Internet. Rimowa has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.      Rimowa is organized and existing under the laws of Germany with its principal place of business in Cologne, Germany.

5.      Rimowa is a world-famous, well-known manufacturer of cases made from aluminum and high-tech material polycarbonate. Rimowa is famous for its luggage with the iconic groove design, which is to a large extent still produced in Germany. With a history stretching back 120 years, to Rimowa, "Made in Germany" and "German Engineering" are synonymous with outstanding materials, brilliant technology and extraordinary product design, crafted to the highest possible quality.

6.      Rimowa is engaged in the manufacture, sale and distribution of the exceptional luggage, cases and travel accessories sold throughout the United States (collectively, the "Rimowa Products"), all of which prominently display its famous internationally-recognized and federally registered trademarks, including RIMOWA, , and the following three-dimensional trademarks for groove design products:

3



7.     The Rimowa trademark enjoys well-known trademark status in many jurisdictions of the world, *inter alia*, attested by the Taiwanese Trademark Office (TIPO) as well as by the KOREAN Trademark Office (KIPO).

8.     Rimowa launched the groove design as early as 1950 and since then, the groove design has been strongly associated with Rimowa Products.  The iconic design is also attested by the Design Museum London showing a Rimowa suitcase as part of its "Designer Maker User" collection.  Additionally, Forbes has called Rimowa's suitcase as "its iconic aluminum suitcase," and *designboom* magazine referred to Rimowa's "iconic aluminum design" and its "famously grooved design."  **<u>Exhibit 1</u>** attached hereto are true and correct copies of these articles.

9.     Rimowa Products are distributed and sold to customers through retailers throughout the United States, including in its own operated Rimowa stores in prime locations (*e.g.,* Madison Avenue in New York, New York, Newbury Street in Boston, Massachusetts, the Miami DESIGN DESTRICT in Miami, Florida, etc.), pop-up stores in Beverly Hills, California and Aspen, Colorado, and in high-quality department stores such as Macy's, Barneys, Bloomingdale's, Nordstrom, Neiman Marcus, and Saks Fifth Avenue.  Rimowa is also known for its exceptional client care services.  In cooperation with select five-star hotels, such as the Ritz Carlton, The Four Seasons, the Mandarin Oriental, Rimowa offers consumers a free suitcase repair service up to their departure.

10.     Rimowa's 120-year history is characterized by an arduous quality standard, exceptional product design, technical innovations, and a unique, well-known trade dress.  Among the purchasing public, genuine Rimowa Products are instantly recognizable as such.

11.     Rimowa incorporates a variety of distinctive marks in the design of its various Rimowa Products.  As a result of its long-standing use, Rimowa owns common law trademark rights in its trademarks.  Rimowa has also registered its trademarks with the United States Patent and Trademark Office.  Rimowa Products typically include at least one of Rimowa's registered trademarks.  Often several Rimowa marks are displayed on a single product.  Rimowa uses its trademarks in connection with the marketing of its Rimowa Products, including the following marks which are collectively referred to as the "Rimowa Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
| --- | --- | --- | --- |
| 4,616,001 | RIMOWA | Oct. 7, 2014 | For: Key-operated metal locks; metal padlocks; metal combination locks; metal locks for pieces of baggage; metal tool chests sold empty; metal containers for the storage and transportation of goods in class 006.<br><br>For: Notebook computer and laptop carrying cases, photo equipment cases made of metal, plastics and/or tissue material or a combination of the aforementioned materials; cases for portable computers; photo equipment bags; protective covers for electronic devices in class 009.<br><br>For: Jewelry cases; key pendants being jewelry; clocks; watches; decorative containers made of precious metal in class 014. |

| | | | |
|---|---|---|---|
| | | | For: Specially adapted bags or baggage-type containers for musical instruments, cases for stringed instruments, namely, guitars in class 015.<br><br>For: pen and pencil holders, passport holders, stationery and presentation folders; File folders in class 016.<br><br>For: Trunks; travelling suitcases; valises; travelling bags; trolley suitcases; vanity cases sold empty; document cases; suitcases and parts thereof, namely, valise handles, telescope handles and wheels; briefcases; knapsacks, billfolds; wallets; wearable strap-on belt pouches; leatherwear traveling bag sets; garment bags for travel; sports bags; wash bags for carrying toiletries; toilet bags for carrying toiletries; hip bags; book bags; leather and imitation leather; goods made from leather and imitation leather, namely, billfolds, wallets and baggage belts; baggage tags; baggage travel containers; umbrellas in class 018.<br><br>For: Packaging containers made of plastic in class 020.<br><br>For: Cradle containers for wine bottles; containers for household or kitchen purposes; thermally insulated containers and vessels for food or beverages in class 021.<br><br>For: Clothing, namely, T-shirts, headwear and caps in class 025. |

<table>
<tr><td></td><td></td><td></td><td>

For: Zipper devices; zippers; zippers for bags in class 026.

For: Specially adapted bags or baggage-type containers for sports equipment; golf bags, with or without wheels in class 028.

For: Cigar boxes; humidors in class 034.

For: Business management; business administration; advertising; services of an advertising agency; development of advertising and marketing concepts; publication of publicity texts; organization of exhibitions and trade fairs for business and advertising purposes; organizing and conducting trade fairs for commercial or advertising purposes; market research and market analysis; import-export agencies; operation of flagship retail stores, wholesale and retail store services and online mail-order services featuring leather goods, namely, travelling suitcases and valises, travelling bags and hand-held bags, knapsacks in class 035.

For: Maintenance and repair of suitcases in class 037.

For: Providing online publications, namely, prospectuses in the field of luggage and travel goods in class 041.

For: Technical research and

</td></tr>
</table>

| | | | |
|---|---|---|---|
| | | | development in the field of luggage development; consultation in the field of luggage development; design services in the field of luggage development in class 042.<br><br>For: Licensing of franchising concepts in class 045. |
| 1,529,438 | RIMOWA | Mar. 14, 1989 | For: photographic equipment cases of aluminum or acrylonitrile/butadine/styrene plastic in class 009.<br><br>For: travelling cases and suitcases, trunks, and cosmetic cases sold empty, made of aluminum or acrylonitrile/butadine/styrene plastic in class 018. |
| 4,479,605 | SALSA | Aug. 27, 2013 | For: Cases for photographic apparatus of metal or of plastics or of fabric material or a combination of the aforesaid materials in class 009.<br><br>For: Travel and hand luggage, in particular trunks and suitcases, cosmetic cases sold empty, attache cases (all made from aluminum or plastic) travel bags, hand bags, backpacks made of textile in class 018. |
| 4,434,656 | TOPAS | Nov. 19, 2013 | For: Cases for photographic apparatus of metal or of plastics or of fabric material or a combination of the aforesaid materials, cases for portable computers, camera bags, protective cases for electronic devices, namely, tablet computers, cell phones, netbook computers, laptops, projectors and calculators in class 009.<br><br>For: travel luggage, luggage |

| | | | |
|---|---|---|---|
| | | | boxes, in particular trunks and suitcases, trunks, cosmetic cases sold empty, attache cases, suitcases, trolly cases and pilot bags in the nature of luggage with rolling wheels, all the aforesaid goods being entirely or partly of metal or plastics or fabric material or a combination of the aforesaid materials; and pouches of textile, all purpose carrying bags, handbags, rucksacks of textile material, holdalls, toiletry bags sold empty, purses, travel cases, traveling bags and trunks in class 018. |
| 4,548,851 |  | June 10, 2014 | For: Cases for photographic apparatus of metal or of plastics or of fabric material or a combination of the aforesaid materials; carrying cases for portable computers; Camera bags, Protective cases for cell phones, tablet computers and laptops in class 009.<br><br>For: Travel luggage; Luggage, namely, trunks and Suitcases; Trunks; Cosmetic cases sold empty; Attaché cases; Suitcases; General purpose sport trolley bags; Pilot bags, namely, travel bags, all the aforesaid goods being entirely or partly of metal or plastics or fabric material or a combination of the aforesaid materials; pouches of textile; Book bags; handbags; rucksacks of textile material; holdalls; toiletry bags sold empty; purses; travel cases; traveling sets, namely, leather toiletry bags sold empty in class 018. |

| | | | |
|---|---|---|---|
| 3,949,886 |  | Apr. 26, 2011 | For: carrying cases for photographic equipment in class 009.<br><br>For: luggage, traveling cases and suitcases, trunks and briefcases in class 018. |
| 4,586,888 |  | Aug. 19, 2014 | For: Travelling suitcases, valises, travelling bags, trolley suitcases, travel baggage in class 018. |
| 4,722,151 |  | Apr. 21, 2015 | For: Travel luggage being entirely or partly of metal or plastics or fabric material or a combination of the aforesaid materials; luggage, namely, suitcases being entirely or partly of metal or plastics or fabric material or a combination of the aforesaid materials; suitcases being entirely or partly of metal or plastics or fabric material or a combination of the aforesaid materials; pilot bags, namely, travel bag suitcases being entirely or partly of metal or plastics or fabric material or a combination of the aforesaid materials in class 018. |

12.     The Rimowa Trademarks have been used exclusively and continuously in the U.S. by Rimowa, and have never been abandoned. The above U.S. registrations for the Rimowa Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to

15 U.S.C. § 1065. Attached hereto as **Exhibit 2** are true and correct copies of the U.S. Registration Certificates for the Rimowa Trademarks included in the above table. The registrations for the Rimowa Trademarks constitute *prima facie* evidence of their validity and of Rimowa's exclusive right to use the Rimowa Trademarks pursuant to 15 U.S.C. § 1057(b).

13.     The Rimowa Trademarks are exclusive to Rimowa, and are displayed extensively on Rimowa Products and in Rimowa's marketing and promotional materials. Rimowa Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense. In fact, Rimowa has expended millions of dollars annually in advertising, promoting and marketing featuring the Rimowa Trademarks. Because of these and other factors, the Rimowa name and the Rimowa Trademarks have become famous throughout the United States.

14.     The Rimowa Trademarks are distinctive when applied to the Rimowa Products, signifying to the purchaser that the products come from Rimowa and are manufactured to Rimowa's quality standards. Whether Rimowa manufactures the products itself or licenses others to do so, Rimowa has ensured that products bearing its trademarks are manufactured to the highest quality standards. The Rimowa Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the Rimowa Trademarks is of incalculable and inestimable value to Rimowa.

15.     Since at least as early as 1999, Rimowa has operated a website where it promotes Rimowa Products at Rimowa.com. Rimowa Products are featured and described on the website and are available for purchase. The Rimowa.com website features proprietary content, images, and designs exclusive to Rimowa.

16. Rimowa has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Rimowa Trademarks. As a result, products bearing the Rimowa Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Rimowa. Rimowa is a multi-million dollar operation, and Rimowa Products have become among the most popular of their kind in the world.

**The Defendants**

17. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit Rimowa Products to consumers within the United States, including the State of Illinois.

18. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the Rimowa Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Rimowa to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Rimowa will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

19.    The success of the Rimowa brand has resulted in its significant counterfeiting. Consequently, Rimowa has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.  In recent years, Rimowa has identified many domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Rimowa Products to consumers in this Judicial District and throughout the United States.  Despite Rimowa's enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores.  Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

20.    Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal.  The Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized retailer.  Many Defendants further perpetuate the

illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Rimowa has not licensed or authorized Defendants to use any of the Rimowa Trademarks, and none of the Defendants are authorized retailers of genuine Rimowa Products.

21. Many Defendants also deceive unknowing consumers by using the Rimowa Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Rimowa Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Rimowa Products. Other Defendants only show the Rimowa Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Rimowa Products.

22. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal

14

their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

23.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.  For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names.  In addition, Counterfeit Rimowa Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Rimowa Products were manufactured by and come from a common source and that Defendants are interrelated.  The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from Rimowa's official Rimowa.com website.

24.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit.  Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners.  Counterfeiters also typically ship products

in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

25.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Rimowa's enforcement efforts.  On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

26.     Defendants, without any authorization or license from Rimowa, have knowingly and willfully used and continue to use the Rimowa Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Rimowa Products into the United States and Illinois over the Internet.  Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Rimowa Products into the United States, including Illinois.

27.     Defendants' use of the Rimowa Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Rimowa Products, including the sale of Counterfeit Rimowa Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Rimowa.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

28. Rimowa hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 27.

29. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Rimowa Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Rimowa Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Rimowa Products offered, sold or marketed under the Rimowa Trademarks.

30. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Rimowa Trademarks without Rimowa's permission.

31. Rimowa is the exclusive owner of the Rimowa Trademarks. Rimowa's United States Registrations for the Rimowa Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Rimowa's rights in the Rimowa Trademarks, and are willfully infringing and intentionally using counterfeits of the Rimowa Trademarks. Defendants' willful, intentional and unauthorized use of the Rimowa Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Rimowa Products among the general public.

32. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

33. Rimowa has no adequate remedy at law, and if Defendants' actions are not enjoined, Rimowa will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Rimowa Trademarks.

34. The injuries and damages sustained by Rimowa have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Rimowa Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

35. Rimowa hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 34.

36. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Rimowa Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Rimowa or the origin, sponsorship, or approval of Defendants' Counterfeit Rimowa Products by Rimowa.

37. By using the Rimowa Trademarks on the Counterfeit Rimowa Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Rimowa Products.

38. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Rimowa Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

39. Rimowa has no adequate remedy at law and, if Defendants' actions are not enjoined, Rimowa will continue to suffer irreparable harm to its reputation and the goodwill of its Rimowa brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, *et seq.*)

40.     Rimowa hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 39.

41.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Rimowa Products as those of Rimowa, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Rimowa Products, representing that their products have Rimowa's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

42.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

43.     Rimowa has no adequate remedy at law, and Defendants' conduct has caused Rimowa to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, Rimowa will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

### PRAYER FOR RELIEF

WHEREFORE, Rimowa prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the Rimowa Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing,

advertising, offering for sale, or sale of any product that is not a genuine Rimowa Product or is not authorized by Rimowa to be sold in connection with the Rimowa Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Rimowa Product or any other product produced by Rimowa, that is not Rimowa's or not produced under the authorization, control, or supervision of Rimowa and approved by Rimowa for sale under the Rimowa Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Rimowa Products are those sold under the authorization, control or supervision of Rimowa, or are sponsored by, approved by, or otherwise connected with Rimowa;

d. further infringing the Rimowa Trademarks and damaging Rimowa's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Rimowa, nor authorized by Rimowa to be sold or offered for sale, and which bear any of Rimowa's trademarks, including the Rimowa Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, at Rimowa's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Rimowa, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Rimowa's

selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Rimowa's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Rimowa's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing, and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

    a.  disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the Rimowa Trademarks;

    b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Rimowa Trademarks; and

    c.  take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Rimowa all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Rimowa Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Rimowa be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Rimowa Trademarks;

6) That Rimowa be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 22nd day of April 2019.          Respectfully submitted,


                                            /s/ Justin R. Gaudio/
                                            Amy C. Ziegler
                                            Justin R. Gaudio
                                            Allyson M. Martin
                                            Greer, Burns & Crain, Ltd.
                                            300 South Wacker Drive, Suite 2500
                                            Chicago, Illinois 60606
                                            312.360.0080
                                            312.360.9315 (facsimile)
                                            aziegler@gbc.law
                                            jgaudio@gbc.law
                                            amartin@gbc.law

                                            *Counsel for Plaintiff Rimowa GmbH*